UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELENA NACARINO,

             Plaintiff,

    v.

CHOBANI, LLC,

             Defendant.

Case No.  20-cv-07437-EMC

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS THIRD
AMENDED COMPLAINT**

Docket No. 54

## I.      INTRODUCTION

Plaintiff Elena Nacarino ("Plaintiff") brings this putative class action against Defendant Chobani, LLC ("Defendant" or "Chobani") based in California consumer-protection law over allegedly unlawful labeling on a Chobani yogurt container.  *See* Third Amended Complaint ("TAC"); Docket No. 51.  Plaintiff now specifically alleges that the "unqualified 'Vanilla' representation on the front of the packaging, which she relied upon in making her purchase, violated FDA regulations in that the vanilla flavor of the Product *is not independently derived* from the vanilla plant but rather contains other non-vanilla plant flavoring that simulates, resembles, or reinforces the characterizing vanilla flavor of the Product."  *Id*. ¶ 7 (emphasis added).  Pending before the Court is Defendant's motion to dismiss Plaintiff's third amended complaint.  *See* Motion to Dismiss ("MTD"); Docket No. 54.  For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

## II.      BACKGROUND

The Court previously noted that this case was one of many recent putative class actions targeting allegedly deceptive labeling on vanilla food products that are not flavored, either

exclusively or in significant part, with vanilla extract or vanilla bean.  *See, e.g.*, *Clark v. Westbrae Natural, Inc.*, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ("*Clark I*"); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020).  Notably, many plaintiffs have focused on manufacturers' use of the term "vanilla" on product labels.  *See, e.g.*, *Clark I*, 2020 WL 7043879; *Cosgrove*, 2020 WL 7211218; *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020).

Plaintiff's counsel filed this case on behalf of Plaintiff Elena Nacarino and a purported class of California consumers on October 23, 2020.  *See* Complaint; Docket No. 1.  After a hearing on Defendant's motion to dismiss the second amended complaint, this Court issued an order granting in part and denying in part Defendant's motion to dismiss Plaintiff's second amended complaint with leave to amend.  *See* Order; Docket No. 48 (August 9, 2021).

According to the second amended complaint, Plaintiff purchased a container of Chobani yogurt (the "Product") at a Whole Foods grocery store in San Francisco, California, in 2020.  SAC ¶ 8; Docket No. 26.  The Product is named "Greek Yogurt Vanilla Blended," displaying what Plaintiff terms the "Vanilla Representations" on its container :  (1) the word "Vanilla," without qualifiers, on the front; (2) images of the vanilla flower and vanilla bean on all sides; and (3) the following text on the back:

> Carried from some far-off, exotic place, where a little flower became a little bean. And that little bean, suspended and unremarkable, the cloak that conceals the magic within. Flavor like perfume, folded up in earthen envelopes, rich and warm and wonderful. *Entirely vanilla*, gently opening like the blossom that began it all.

*Id.* ¶¶ 2-5 (emphasis added).  Plaintiff relied on the vanilla representations in concluding that the Product's vanilla flavor comes "*exclusively* from ingredients derived from the vanilla plant, such as vanilla beans or vanilla extract," and in purchasing the Product.  *See id.* ¶¶ 6, 8 (emphasis in original).  Plaintiff brought claims under (1) the unlawful prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) the unfair and fraudulent prongs of the UCL; (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (4) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  *See id.* ¶¶ 62-8.  Additionally, Plaintiff sought declaratory relief, restitution and

disgorgement, injunctive relief, compensatory and punitive damages, and attorneys' fees and costs. *See id.*, Prayer for Relief at 25.

In its August 9, 2021 Order, the Court held that no reasonable consumer would take the Product's use of the word "vanilla" on the front and the package's vanilla imagery as indicating that the Product's flavor is derived *exclusively* from the vanilla plant, as the Product does not display any statements "even arguably conveying that vanilla bean or extract is the exclusive source of its vanilla flavor." Order at 11-12. The Court emphasized that "[h]ere, the Product nowhere asserts that it is, *e.g.*, 'made with all-natural vanilla' or '100%' vanilla, nor displays any other statements even arguably conveying that vanilla bean or extract is the exclusive source of its vanilla flavor." *Id.* at 13. As such, the Court dismissed Plaintiff's claims under the unfair and fraudulent prongs of the UCL, the FAL, and the CLRA without leave to amend "since further amendment would be futile, given the manifest implausibility of her deceptive labeling claims. . . ." *Id.* at 15.

However, the Court found that Plaintiff "adequately alleged that the Product does not comply with [21 C.F.R. §] 101.22(i), as she asserts that the Product's flavoring does not derive exclusively from the vanilla plant and that its label does not include 'with other natural flavor' in compliance with the prescriptive terms of Section 101.22(i)(1)(iii)." *Id.* at 16. Section 101.22(i)(1) provides in its entirety:

> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:
>
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

United States District Court
Northern District of California

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. § 101.22(i)(1).  As relevant here, this Section states that a manufacturer can label its product as a "vanilla" product so long as it contains no artificial ingredients that provide the vanilla flavor, although there are certain exceptions.  Additionally, § 101.22(i)(1)(iii) "means that if, for example a product does not contain enough real vanilla to independently characterize a product's vanilla flavor (hence, the product falls within (i)(1)(i)), *and* the product contains other natural flavors which simulate, resemble or reinforce the vanilla flavor, *then* the label must comply with (i)(1)(i) and have the word 'natural' precede 'vanilla' *and* it must also say 'with other natural flavor' after the name on the food."  *Clark v. Westbrae Natural Inc.*, 2021 WL 1580827, at *6 (N.D. Cal. Apr. 22, 2021) ("*Clark II*").

The Court further explained in its Order that given the "allegedly stark differences in" the mass spectrometry testing results on the Product and competitor products noted in the SAC, Plaintiff "plausibly pled that the Product is not exclusively flavored with 'real' vanilla."  Order at 16.  "The marked differences in vanillin levels between the Product and competitor yogurts plausibly imply that the Product's vanillin does not come solely from the vanilla plant" and as such, the Court denied Defendant's motion to dismiss with respect to Plaintiff's claim under the UCL's unlawful prong which was predicated on the violation of the C.F.R.  *Id.* at 17.  The Court specifically found that "the difference in aromatic compound levels and the disparity among vanillin levels between the Product and competitor yogurts *provide[d] an adequate factual basis for [Plaintiff] to state a plausible federal violation and resultant claim under the UCL's unlawful prong*."  *Id.* (emphasis added).

Further, the Court determined that Plaintiff "may pursue only some of the equitable

4

remedies that she requests under the UCL's unlawful prong, *as she lacks an adequate remedy at law with respect to her request for injunctive relief but not her request for equitable restitution*." *Id*. at 19 (emphasis added).  The Court acknowledged that Plaintiff does not seek damages under her UCL unlawful prong claim, but rather, she seeks an injunction and restitution and disgorgement of all monies from the sale of the Products that were unjustly acquired.  *Id*. at 20.  However, the Court noted that Plaintiff "does seek damages with respect to her unavailing CLRA claim."  *Id*.  Notably, the Court ultimately dismissed Plaintiff's request for equitable relief with respect to her claim for restitution or disgorgement under the UCL's unlawful prong since "she ha[d] not demonstrated that there is an inherent limitation of the legal remedy" of damages.  *Id.* at 22.  The Court emphasized that Plaintiff failed "to allege any specific facts—*e.g.*, that she would receive less compensation via damages than restitution—showing damages under the CLRA are necessarily 'inadequate or incomplete, and nothing in the record supports that conclusion.'"  *Id.* (citations omitted).  However, since the Court was unable to conclude that amendment would be futile, the Court granted Plaintiff leave to amend "to plead that damages are inadequate and that she is thus entitled to seek equitable restitution under the UCL's unlawful prong."  *Id.* at 23.  Thus, the Court permitted Plaintiff's UCL unlawful prong claim to proceed, specifically as to her request for injunctive relief.  *Id.*

Notably, in its Order granting leave to amend, the Court acknowledged that the district court in *Elgindy v. AGA Service Co.*, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021), suggested that a plaintiff could pursue equitable remedies under the UCL where such claims were "rooted in a different theory" of liability and involved different factual allegations than her claims for damages.  Order at 22 (quoting *Elgindy*, 2021 WL 1176535 at *15).  The Court noted that in the instant case, Plaintiff's claims were rooted in the same allegations that labeling the Product "vanilla" is misleading to consumers *and* a violation of the FDA regulations.  *Id.*

In response to the Court's grant of leave to amend, Plaintiff's Third Amended Complaint ("TAC") added the allegation that "Plaintiff lacks an adequate remedy at law because the UCL, the only claim brought by Plaintiff, does not provide for damages."  TAC ¶ 53.  Additionally, as noted above, Plaintiff adds a new factual allegation that the Product label violates FDA

regulations, not because the vanilla flavor allegedly does not come *exclusively* from the vanilla plant, but because the "vanilla flavor of the Product does not come *independently* from the vanilla plant." *Id.* ¶ 34 (emphasis added).  As noted above, Plaintiff previously alleged that "[s]cientific testing . . . revealed that the vanilla flavor of the Product does not come *exclusively from* . . . the vanilla plant" with regard to her deceptive labeling claims that were dismissed without leave to amend.  SAC ¶ 36 (emphasis added).  Plaintiff now alleges that the same "[s]cientific testing . . . revealed that the characterizing vanilla flavor of the Product does not come *independently* from vanilla extract or other ingredients derived from the vanilla plant" with regard to her FDA regulation violation claim.  TAC ¶ 20 (emphasis added).

Defendant claims that Plaintiff's TAC should be dismissed primarily on the following two grounds:  (1) Plaintiff "has again failed to allege why monetary damages are inadequate, as required by the Court's order"; and (2) "Plaintiff lacks standing to bring her UCL unlawful claim for injunctive relief" based on an intervening Ninth Circuit case *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021).  MTD at 2.  Defendant also argues that if the Court declines to dismiss the TAC, the Court "should strike Plaintiff's new allegations that far exceed the scope of the Court's Order granting leave to amend."  *Id.*  Finally, Defendant asserts that "there is an independent ground for dismissal of the TAC in its entirety:  Plaintiff fails to plausibly allege a violation of the UCL's unlawful prong, which requires that Plaintiff allege actual reliance and a resulting injury-in-fact."  *Id.* at 3.

### III.      LEGAL STANDARD

A.      Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d

1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Claims sounding in fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy the heightened standard of Rule 9(b), a plaintiff must identify the ''who, what, when, where, and how'' of the alleged misconduct and explain how the statement or omission complained of was false or misleading. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  The purpose of Rule 9(b) is to require that a plaintiff's allegations be "specific enough to give defendants notice of the particular misconduct which is alleged . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rule 9(b) allows, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Where a court dismisses a complaint, it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

United States District Court
Northern District of California

B.        Motion to Strike (Rule 12(f))

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."). Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent. *Id.* If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057. Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party. *Id.*

## IV.        DISCUSSION

A.        Failure to State a Claim Under UCL's Unlawful Prong

Presently, Plaintiff's sole claim for relief is under the unlawful prong of the UCL. Notably, Plaintiff specifically claims the Product's label was "unlawful" under the UCL insofar as it violated the Sherman Law, *see* Cal. Health & Saf. Code § 110100, which adopts and incorporates the federal Food and Drug Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and its food labeling regulations, *see* 21 C.F.R. § 101 *et seq.* TAC ¶ 19.

Defendant contends that Plaintiff's UCL claim should be dismissed in its entirety because Plaintiff fails to state a claim under the UCL's unlawful prong since she: (1) fails to plausibly

1    allege that her reliance on the Product caused her to be deceived such that she suffered an injury in

2    fact, and (2) fails to meet the heightened pleading requirements of (9)(b).  MTD at 14-18.

3         Plaintiff argues that the "law of the case precludes reconsideration" of this issue since the

4    Court already found that Plaintiff "'plausibly pled that the Product does not comply with 21

5    C.F.R. § 101.22(i) and thus violates the UCL's unlawful prong.'"  Opp'n at 4; Docket No. 55

6    (quoting Order at 15).  Plaintiff states that the Court based its finding that she plausibly pled her

7    claim under the unlawful prong of the UCL on "allegations in the SAC that remain in [her] TAC."

8    *Id*.

9         In its reply, Defendant emphasizes that "the law of the case is inapposite here" since

10   Plaintiff changed her factual allegations in the TAC and notes that the Court "only held that

11   Plaintiff alleged a violation of a federal regulation, but did not address whether [she] adequately

12   pleaded deception under the UCL's unlawful prong, which requires materiality, reliance and

13   injury."  Reply at 11.  Additionally, Defendant argues that "Plaintiff confirms that she is relying

14   on a strict liability standard—whether she adequately alleged a violation of 21 C.F.R. § 101.22(i)"

15   and emphasizes that this court and others in the Ninth Circuit have "rejected that theory for

16   purposes of stating a claim under the UCL's unlawful prong."  *Id.* at 12.  Further, Defendant

17   argues that Plaintiff failed to address its argument regarding the heightened pleading standard of

18   Rule 9(b) and therefore "effectively concedes the argument."  *Id*. at 13-14.

19        The UCL prohibits business acts or practices that are "unlawful."  Cal. Bus. & Prof. Code

20   § 17200.  As the California Supreme Court has explained, the unlawful prong of the UCL

21   "borrows violations of other laws and treats [them] . . . as unlawful practices independently

22   actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."

23   *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383 (1992) (internal quotation omitted).

24   "Virtually any law can serve as the predicate for a section 17200 action."  *Klein v. Earth Elements,*

25   *Inc.*, 59 Cal. App. 4th 965, 969 (1997).  In order to state a claim under the UCL, while an unlawful

26   act may be predicated upon (and hence effectively incorporating), *e.g.*, federal regulations,

27   standing under the UCL independently requires that the plaintiff is a "person who has suffered

28   injury in fact and has lost money or property *as a result of* the unfair competition."  Cal. Bus. &

United States District Court
Northern District of California

Prof. Code § 17204 (emphasis added).

As noted above, the Court previously held that Plaintiff "adequately alleged that the Product does not comply with Section 101.22(i), as she assert[ed] that the Product's flavoring does not derive exclusively from the vanilla plant and that its label does not include 'with other natural flavor' in compliance with the prescriptive terms of Section 101.22(i)(1)(iii)." Order at 16.  The Court explicitly held that "since the Product's label only includes the term 'Vanilla,' [Plaintiff] has adequately alleged that the Product does not comply with Section 101.22(i)(1)(iii)." *Id.*  Taken as a given plausible claim of a violation of federal law, the Court turns to Defendant's argument that Plaintiff has failed to adequately plead loss of money or property as a result of a violation – *i.e.* reliance (in the case of misrepresentation) as required by the UCL.

1.     Plausibility of Allegations Pertaining to Reliance

Defendant specifically argues that "Plaintiff's TAC fails to plausibly allege that her reliance on the Product label caused her to be deceived such that she suffered an injury-in-fact." MTD at 14.  Defendant claims that "Plaintiff cannot seek UCL relief—even under the UCL's unlawful prong—based on a strict liability theory" by merely pleading a violation of an FDA regulation. *Id.* at 15.  Defendant further notes that "[d]espite the Court's finding that her interpretation of the Product label was implausible as a matter of law, Plaintiff now alleges that she 'read and relied on Defendant's label on the Product to believe that the characterizing flavor of the Product was vanilla and that the vanilla flavor came independently from the vanilla plant.'" *Id.* at 16 (quoting TAC ¶ 33).  Defendant argues that Plaintiff "could not have plausibly reached this conclusion given that (1) the front label states 'vanilla,' which the Court concluded 'merely indicates flavor and not an ingredient source,' and (2) the ingredient list expressly provides that the Product includes 'natural flavors' in addition to vanilla extract." *Id.* (quoting Order at 10).  As such, Defendant asserts that "Plaintiff fails to plausibly allege that she relied on the Product's 'vanilla' label to conclude that the Product's vanilla flavor 'came independently' from the vanilla plant, and *as a result* of the alleged misrepresentation, was deceived and suffered an injury or loss of money." *Id.*

In *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011), the California Supreme Court made

United States District Court
Northern District of California

United States District Court
Northern District of California

clear that where the essence of the claim is based on misrepresentations, "as a result of" under Section 17204 "means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 326 (citation and quotations omitted). The California Supreme Court explained that because "reliance is the causal mechanism of fraud," a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Id.* (citation omitted). To satisfy the causation requirement, plaintiffs are required to plead and prove that they actually relied on the statement at issue. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset*, 51 Cal. 4th at 326-27). Notably, this appears true of all UCL claims, regardless of whether they are brought under the unfair, unlawful, or fraudulent prong. *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 4641896, at *2 (N.D. Cal. Oct. 16, 2017) (holding reliance is required to establish standing under the UCL unlawful prong and granting the defendant's motion to dismiss to the extent it seeks to dismiss any UCL claim based on strict liability without showing reliance).

The test of reliance is not inherently based on objective standard. The reasonable consumer test of reliance is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation. The predicate violation here – California's Sherman Law – does not require reliance as measured by a reasonable consumer. As the Ninth Circuit in an unpublished order in *Bruton v. Gerber Products Company*, 703 Fed. Appx. 468, 471-472 (9th Cir. 2017) stated, the best reading of California precedent is that California's Sherman Law incorporates standards set by FDA regulations, and the FDA regulations include no requirement that the public be likely to experience deception. The Court thus reversed the district court's grant of summary judgment on the plaintiff's claims that the labels were unlawful in violation of the UCL.

Although this Court stated in its prior order that Plaintiff plausibly alleged a violation under the UCL's unlawful prong, *see* Order at 16-17, it did not address the question of reliance as Defendant had not advanced the argument made herein that actual reliance under *Kwikset* must be shown here. The Court now addresses this issue. Plaintiff alleges that she "sought a yogurt

1    product whose characterizing vanilla flavor is independently derived from the vanilla plant" and

2    "read and relied on Defendant's label on the Product to believe that the characterizing flavor of the

3    Product was vanilla and that the vanilla flavor came independently from the vanilla plant."  TAC

4    ¶¶ 32-33.  Additionally, Plaintiff contends that had she "known the truth—that the label Plaintiff

5    relied upon in making the purchase was unlawful in that the vanilla flavor of the Product does not

6    come independently from the vanilla plant—[she] would not have purchased the Product at a

7    premium price or bought the Product at all."  *Id.* ¶ 34.  Although given the Court's prior

8    determination that no reasonable consumer would conclude the package implies the vanilla flavor

9    is derived exclusively (or independently) from the vanilla plant, Plaintiff has arguably sufficiently

10   pled her *actual* reliance resulting in her alleged injury in this case.

11          Accordingly, the Court **DENIES** Defendant's motion to dismiss for failure to state a claim.

12          2.      Heightened Pleading Standard of Rule 9(b)

13          Additionally, Defendant argues that Plaintiff fails to "satisfy the heightened pleading

14   standard of Rule (9)(b)."  MTD at 17.  Defendant specifically claims that Plaintiff "fails to explain

15   *how* she relied on any representations on the label to reach the illogical conclusion that the

16   Product's vanilla flavor is 'independently derived' from the vanilla plant, based on the word

17   'Vanilla,' and an ingredient list that includes both 'vanilla extract' and 'natural flavors.'"  *Id*. at 18

18   (emphasis added).

19          Notably, "[t]he Court looks to the 'gravamen' of Plaintiff's causes of action to determine if

20   the causes of action are grounded in fraud . . . .  Usually, violations of the Sherman Law and FDA

21   labeling regulations constitute misleading actions that are grounded in fraud."  *Hadley v. Kellogg*

22   *Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017).  In *Hadley*, Judge Koh considered

23   Plaintiff's similar admission that the "FDA regulations at issue are intended to prevent the

24   consuming public from being misled" in determining that Plaintiff's unlawful prong UCL claim

25   was grounded in fraud.  *Hadley*, 243 F. Supp. 3d at 1098-99 (dismissing UCL unlawful claim that

26   alleged a "bare technical violation" of federal regulations).  As noted above, fraud allegations are

27   subject to the heightened pleading standard under Rule 9(b) and as such, "[a]verments of fraud

28   must be accompanied by '"the who, what, when, where, and how' of the misconduct charged," as

United States District Court
Northern District of California

1    well as the circumstances indicating fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

2    1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

3         Here, Plaintiff does explain *how* she relied on representations on the label to reach the

4    conclusion that the Product's vanilla flavor is "independently derived" from the vanilla plant.  She

5    explicitly alleges that she "read and relied on Defendant's label on the Product to believe that the

6    characterizing flavor of the Product was vanilla and that the vanilla flavor came independently

7    from the vanilla plant." TAC ¶ 33.  Contrary to Defendant's assertion, it appears that Plaintiff's

8    allegations satisfy 9(b)'s *how* requirement.

9         Thus, the Court **DENIES** Defendant's motion to dismiss for failure to state a claim on the

10   basis that Plaintiff failed to satisfy heightened pleading requirements of Rule (9)(b).

11   B.   Adequacy of Legal Remedy

12        Plaintiff specifically alleges that she "lacks an adequate remedy at law because the UCL,

13   the only claim [now] brought by Plaintiff, does not provide for damages."  TAC ¶ 53.

14        Defendant argues that the TAC still fails to allege that monetary damages are inadequate

15   and argues that Plaintiff's allegation that the UCL does not provide for damages is conclusory."

16   MTD at 4.  Further, Defendant states that Plaintiff failed to "add any factual allegations to explain

17   how monetary damages are inherently inadequate to redress her alleged harm and still 'has not

18   demonstrated that there is an inherent limitation of the legal remedy.'"  *Id.* at 4 (quoting Order at

19   22).

20        In her opposition, Plaintiff states that the "TAC is crystal clear that [she] relied upon

21   [Defendant's] unlawful label, and her injury was monetary" and notes that she "seeks restitution

22   and disgorgement of [Defendant's] ill-gotten gains, as expressly permitted under the UCL."

23   Opp'n at 8.  Plaintiff claims that Defendant is "ultimately tak[ing] issue with how, not whether,

24   Plaintiff has pled that she does not have an adequate remedy at law" and emphasizes that plaintiffs

25   are "'masters of the complaint.'"  *Id.* at 11 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386,

26   395 (1987).  Plaintiff argues that she "amended her allegations to show that there is an inherent

27   limitation on the legal remedy in that damages are simply not permitted under the sole unlawful

28   claim she asserts factually and as a cause of action."  *Id.*  Plaintiff states that she "has neither pled

United States District Court
Northern District of California

1    nor sought legal remedies in the TAC" and "argues that equitable restitution goes beyond the

2    damages available to her because Plaintiff has no damages available to her." *Id*.

3          In its reply, Defendant argues that Plaintiff's assertion that "because the Court dismissed

4    her claim under the CLRA, she is unable to seek damages[,]" is "premised on a fundamental

5    misunderstanding of the law."  Reply at 3; Docket No. 57.  Defendant states that Plaintiff

6    "misconstrues 'inherent limitation' to mean 'unavailable.'"  *Id*.  Defendant emphasizes that "the

7    Court explained that Plaintiff's 'inability to obtain damages here results from her CLRA claim's

8    failure on the merits; she has not demonstrated that there is an inherent limitation of the legal

9    remedy that renders it inadequate.'"  *Id*. (quoting Order at 22).  Defendant further claims that

10   "whether Plaintiff is able to pursue a CLRA claim for damages is irrelevant to this inquiry."  *Id*.

11   Defendant agrees that Plaintiff is the "master of her complaint" and notes that she "sought

12   damages in all three of her prior complaints" and that only "now she does not seek damages

13   because the Court dismissed her claim as inadequately pled.  But whether or not her claim for

14   damages was dismissed on the merits or voluntarily, she cannot escape the fact that she sought

15   damages under the CLRA and her request for restitution is based on a loss of monetary value."  *Id*.

16   at 4.

17         "[A] federal court must apply traditional equitable principles before awarding restitution

18   under the UCL and CLRA."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir.

19   2020).  This includes the equitable principle that in order to obtain an equitable remedy, a plaintiff

20   must lack an "adequate remedy at law."  *Mort v. U.S.*, 86 F.3d 890, 892 (9th Cir. 1996); *see also*

21   *Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16,

22   2020) ("[The adequate remedy at law] principle applies squarely to an award of restitution – an

23   equitable remedy – under the UCL.").  Judge Seeborg explained in *Sonner*, "[i]n the Ninth Circuit,

24   the relevant test is whether an adequate damages remedy is available, not whether the plaintiff

25   elects to pursue it, or whether she will be successful in that pursuit."  *Mullins v. Premier Nutrition*

26   *Corp.*, No. 13-cv- 01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom.*

27   *Sonner*, 971 F.3d 834.

28         As the Court noted in its prior order, in *Sonner*, a consumer brought a putative class action

United States District Court
Northern District of California

14

against a company that marketed and sold a liquid dietary supplement, asserting damages and

equitable restitution claims for false or misleading advertising in violation of the UCL and CLRA,

based on allegations that the company's advertisements and packages encouraging consumers to

use the supplement to help keep their joints flexible and lubricated impliedly promoted the

supplement as a remedy for pain and stiffness in arthritic joints. *Sonner*, 971 F.3d at 837-838.

Following the consumer's amendment of the complaint to drop the CLRA damages claim on the

eve of trial, the district court granted the company's motion to dismiss for failure to state a claim

and denied leave to amend the complaint to reallege a CLRA damages claim. *Id*. at 838.

On appeal, the Ninth held that the consumer was not entitled to equitable restitution for

violation of the UCL and CLRA since the consumer failed to establish that she lacked an adequate

remedy at law for false or misleading advertisement claims against the company and thus, the

consumer was not entitled to equitable restitution for a violation of the UCL and CLRA. *Id*. at

844. The Ninth Circuit noted that the consumer conceded that she sought "the same sum in

equitable restitution as 'a full refund of the purchase price'—$32,000,00—as she requested in

damages to compensate her for the same past harm." *Id.* The Ninth Circuit concluded that the

consumer failed to "explain how the same amount of money for the exact same harm is inadequate

or incomplete . . . ." *Id*. The Ninth Circuit further held that the district court did not abuse its

discretion in denying the consumer leave to amend her complaint for a third time to reallege a

damages claim for false or misleading advertisement under the CLRA against the company,

emphasizing that the consumer strategically chose to amend the complaint on the eve of trial to

drop the damages claim and seek only equitable restitution, the company opposed the request to

amend and argued that the consumer needed to establish lack of a legal remedy before seeking

equitable restitution and warned that it would bring a motion to dismiss on that basis, and the

district court cautioned the consumer prior to amendment about the risk she was taking in

dropping the damages claim on the eve of trial. *Id*. at 845.

*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal

remedy by eliminating its availability by taking volitional action. *See Guzman v. Polaris Indus.*

*Inc.*, No. 8:19-cv-01543-FLA (KESx), 2021 WL 2021454, at *11 (C.D. Cal. May 12, 2021) (in

granting the defendants' motion for summary judgment the court explained that the plaintiff sought damages for violations of the CLRA in addition to restitution under the UCL in the second amended complaint but failed to identify facts to establish an inadequate legal remedy and the court noted that "the relevant question, however, is not whether [the plaintiff] has pleaded legal remedies, but whether he could have sought an adequate legal remedy."), appeal filed May 19, 2021 (No. 21-55520).  Similarly, where the plaintiff had an adequate legal remedy but forsook it (e.g. by failure to abide by the statute of limitations), the plaintiff cannot be said to have been without an adequate legal remedy.  *See Guzman*, 2021 WL 2021454, at *11.

Thus, while a plaintiff may not through actions within its control forsake an adequate legal remedy and then claim it has no adequate legal remedy, thereby opening the door to otherwise identical equitable relief, the analysis is less clear where the legal remedy has been denied despite plaintiff's best efforts.  In particular, it is not clear whether the plaintiff must demonstrate there is some structural impediment to an equivalent legal remedy (such as a statutory limit) as opposed to e.g. a failure of factual proof on the legal claim.  Although this Court in its prior order suggested the plaintiff must demonstrate there is some "inherent limitation" on the legal remedy (Order at 22; Docket No. 48), other courts have indicated imposing such a burden at the pleading state may be premature.  The Court takes note of those decisions and refines its analysis, at least as it applies at this pleading stage.

In *Junhan Jeong v. Nexo Financial LLC, et. al.*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022), in addition to several other claims, the plaintiff sought damages under breach of contract and UCL claims, as well as restitution under the UCL and injunctive relief under the UCL and CLRA.  On a motion to dismiss, the court distinguished *Sonner* when analyzing the plaintiff's claim for restitution under the UCL at the pleading stage, noting that "[c]ourts in the Ninth Circuit are divided on how exacting a standard *Sonner* imposes on plaintiffs who plead claims for equitable remedies at the pleading stage."  *Id*. at*27 (citing *Byton N. Am. Co. v. Breitfeld*, No. CV 19–10563–DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (referencing an "intra-circuit split on the issue of whether courts may allow UCL claims to proceed past the pleading stage when other adequate remedies exist" but holding that in the

16

absence of controlling authority, the court would allow the plaintiffs to plead UCL claims in the alternative, even when other adequate remedies may exist) (citation omitted)).  The court found "that *Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial" and as such, "provides limited guidance for pleading claims for legal and equitable relief."  *Id*.  In so finding, the court noted other cases where courts "d[id] not consider *Sonner* to impose strict requirements at the pleading stage."  *Id*. (citing *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage.  The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Byton*, 2020 WL 3802700, at *9 ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent.")).  The court emphasized that, "in light of *Sonner's* limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper."  *Id*.  Thus, "[g]iven the general liberal policy courts have toward pleading in the alternative," the court held that the plaintiff could "proceed with his equitable restitution claim at this stage even though he is also seeking contract damages" and that the court could "reassess at a later stage of the case . . . ."  *Id*.

In *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022), Judge Orrick similarly ruled on a motion to dismiss that "because *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case . . . [and that] it is too early to determine whether the plaintiffs' legal remedies will ultimately be adequate, so it makes sense to defer this determination."

These ruling are consistent with Federal Rule of Civil Procedure 8 which allows for pleading in the alternative.  Specifically, Rule 8 states that a claim for relief must contain "a demand for relief sought, *which may include relief in the alternative or different types of relief*."  Fed. R. Civ. P. 8(a)(3) (emphasis added).  *See Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.") (citations omitted).

1    Similar to the plaintiff in *Junhan Jeong,* 2022 WL 174236, Plaintiff here initially pled a

2    claim for damages under the CLRA and a claim for restitution under the UCL.  After the Court

3    dismissed Plaintiff's CLRA claim on the merits, Plaintiff now pleads that there is an inadequate

4    legal remedy since she has no other basis to assert damages.  *See* TAC ¶ 53.  Moreover, as

5    discussed below, Plaintiff has added allegations that arguably distinguishes her UCL claim to

6    some extent from the prior CLRA claim.  Thus, "[w]hile the Court may reassess at a later stage of

7    this case, it declines to trim out Plaintiff's equitable restitution claim at this early stage."  *Junhan*

8    *Jeong,* 2022 WL 174236, at *27.  The issue of Plaintiff's entitlement to seek the equitable remedy

9    of restitution may be revisited at a later stage.

10   As such, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for

11   restitution.

12   C.    <u>Standing to Seek Injunctive Relief</u>

13   Defendant specifically claims that under *In re Coca-Cola Products Marketing & Sales*

14   *Practices Litigation (No. II)*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021), Plaintiff

15   lacks standing under Article III to pursue injunctive relief since her "conditional promise to

16   purchase a reformulated product is insufficient as [a] matter of law" and she has not attempted to

17   allege that she has or imminently will suffer from any "imminent or particularized harm."  *Id*. at

18   11.  As such, Defendant argues that Plaintiff's UCL claim should be dismissed in its entirety with

19   prejudice.  *Id*.

20   Plaintiff broadly asserts that "the law of the case precludes reconsideration of issues

21   already decided by this Court."  Opp'n at 4.  Plaintiff argues that "Defendant identifies no proper

22   basis for this Court to reconsider its prior rulings that Plaintiff plausibly pled her claim under the

23   unlawful prong of the UCL and that she has standing with respect to that claim."  *Id*. at 9.  Plaintiff

24   specifically argues that *In re Coca-Cola* does not constitute an intervening change in the law as it

25   simply reiterated the standing requirement of *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956

26   (9th Cir. 2018).  *Id.* at 6-7.

27   Defendant argues that an "intervening change in the law" constitutes an exception to the

28   law of the case.  Reply at 7; *see United States v. Moore*, No. 20-30273, 857 Fed. Appx. 409 (9th

United States District Court
Northern District of California

Cir. 2021) (the Ninth Circuit recognizes the following exceptions to the law of the case doctrine: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial). Defendant contends that the Ninth Circuit's decision in *In re Coca-Cola* constitutes intervening authority warranting reconsideration. Defendant specifically argues that "Plaintiff's allegation[] that she 'would likely purchase' the product again in the future if it was reformulated is insufficient under the Ninth Circuit's recent decision." *Id.*

As the Court previously noted, when seeking injunctive relief, the injury-in-fact requirement is met when the consumer alleges that she (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-70. Notably, the Court previously held that Plaintiff had "standing to seek injunctive relief, albeit solely with respect to her claim under the UCL's unlawful prong." Order at 18. The Court expressly found that Plaintiff had "standing to pursue injunctive relief under *Davidson's* first scenario, as she has alleged that she cannot rely on the Product's advertising or labeling, and that she will not purchase the Product again despite her desire to." *Id.* at 19. The Court emphasized that Plaintiff's specific allegation that she "*would purchase the Product again in the future* if the Product were reformulated such that the vanilla flavor came exclusively from the ingredients derived from the vanilla plant or the Product were not deceptively labeled" satisfied *Davidson's* first prong. *Id.* (quoting SAC ¶ 9). Plaintiff similarly claims in the TAC that she "would purchase the Product again in the future if the Product were reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant or if the labelling complied with federal and state regulations." TAC ¶ 8.

In *In re Coca-Cola*, Coca-Cola appealed a district court order granting class certification in a multidistrict consumer action alleging mislabeling of Coke. *In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, 2021 WL 3878654 at *1. The plaintiffs claimed that "phosphoric acid is a chemical preservative or an artificial flavor; that Coca-Cola misled the

1    public by using the advertising slogan 'no artificial flavors. no preservatives added. since 1886'

2    even though Coke contains phosphoric acid; and that Coca-Cola continues to mislabel its product

3    by not including a required disclosure that phosphoric acid is an 'artificial flavor' or a

4    'preservative.'" *Id*.  The Ninth Circuit explained that "*Davidson* offered two non-exclusive

5    examples of threatened future harm a consumer complaining of assertedly false labeling might

6    plausibly allege: 'she will be unable to rely on the product's advertising or labeling in the future,

7    and so will not purchase the product although she would like to' and 'she might purchase the

8    product in the future, despite the fact it was once marred by false advertising or labeling, as she

9    may reasonably, but incorrectly, assume the product was improved.'" *Id.* (quoting *Davidson*, 889

10   F.3d at 969-70).  The Ninth Circuit noted that two of the plaintiffs, Engurasoff and Dube, did not

11   specify whether they would want to purchase Coke in the future and concluded that "[w]ithout any

12   stated desire to purchase Coke in the future, [they did] not have standing to pursue injunctive

13   relief." *Id*. at \*2.  Additionally, the Ninth Circuit noted that four of the plaintiffs, Ogden, Merritt,

14   Sowizrol, and Lazaroff, "submitted declarations stating that they 'would consider purchasing'

15   Coke depending on 'several factors, including but not limited to what disclosures Coca-Cola

16   provided regarding phosphoric acid or any other ingredient in Coke, whether Coca-Cola removed

17   phosphoric acid, and what, if anything replaced phosphoric acid, and the price of [Coke] relative

18   to other beverages.'" *Id*.  The Ninth Circuit emphasized that the "'threatened injury must be

19   certainly impending to constitute injury in fact'" and held that "[t]hese plaintiffs' declarations that

20   they would 'consider' purchasing properly labeled Coke are insufficient to show an actual or

21   imminent threat of future harm." *Id*. (citations omitted).  Additionally, as for two plaintiffs,

22   Woods and Marino, that asserted that "they would be interested in purchasing Coke again if its

23   labels were accurate, regardless of whether it contained chemical preservatives or artificial

24   flavors," the Ninth Circuit concluded that this allegation of a bare procedural violation could not

25   satisfy the demands of Article III standing as it was "insufficient to demonstrate that they suffered

26   any particularized adverse effects." *Id*.  Thus, the Ninth Circuit held that none of the plaintiffs had

27   demonstrated the requisite harm or imminence required under *Davidson*, and as such, had "not

28   adequately alleged an injury in fact and do not have standing to pursue injunctive relief." *Id*. at

United States District Court
Northern District of California

20

*3.

It appears that *In re Coca-Cola* explains and expands upon *Davidson's* standing requirement, and this is sufficient to warrant reconsideration.  However, *In re Coca-Cola* does not change the outcome here.  It is factually distinguishable.  The *In re Coca-Cola* plaintiffs either: (1) did not specify whether they would purchase the allegedly mislabeled Coke in the future; (2) alleged that they "would consider purchasing" Coke depending on several factors, including but not limited to what disclosures Coca-Cola provided regarding phosphoric acid or any other ingredient in Coke; or (3) asserted that "they would be interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors."  *See In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, 2021 WL 3878654 at *2.  In contrast to the *In re Coca-Cola* plaintiffs, Plaintiff here alleges that she would purchase the Product again in the future if the Product were reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant *or* if the labelling complied with federal and state regulations.  *See* TAC ¶ 8.  Plaintiff alleges more than "a bare procedural violation" and that the Court's prior finding that Plaintiff establish standing for injunctive relief still obtains.  *See* Order at 19 ("Every consumer who satisfies *Davidson's* first scenario would purchase the contested product only 'if' it changed in some way."); *see also Vizcarra v. Unilever U.S., Inc.*, 2020 WL 4016810, at *6 (N.D. Cal. July 16, 2020) (finding that the plaintiff had standing where she alleged that she would purchase an ice cream product again "if it were truly flavored as labeled and advertised"); *cf. Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018) (finding that a plaintiff lacked standing where she only alleged that she would "consider buying" a product again).

Thus, the Court **DENIES** Defendant's motion to dismiss Plaintiff's request for injunctive relief on standing grounds.

D.    Striking New Allegations

If the Court does not dismiss Plaintiff's UCL claim in its entirety, Defendant argues in the alternative that the Court should strike Plaintiff's revised allegations under Rule 12(f) for exceeding the scope of the Court's order granting leave to amend with regard to her claim for

21

equitable relief.  MTD at 12.  Defendant states that the Court's "Order granted Plaintiff limited leave to amend her complaint to plead that damages are inadequate."  *Id.*  Defendant argues that not only did Plaintiff fail to plead that damages are an inadequate remedy "but she added new and different allegations to her TAC, in an effort to bolster her claim that the Product's label fails to comply with FDA's regulations."  *Id.*  Defendant emphasizes that "Plaintiff's prior complaints were based on her theory that [Defendant's] label was deceptive based on her allegations that the Product's vanilla flavoring did not come 'exclusively from the vanilla plant,' [but now she] contends that the vanilla flavor does not come 'independently' from the 'vanilla plant.'"  *Id.* (quoting SAC ¶ 8, TAC ¶¶ 33-34).  Defendant specifically states that Plaintiff's "improper amendments include the following allegations:

- Adding the image of the 5.3-ounce product label (*id.* ¶ 2), which was not included in the SAC;

- Repackaging her allegations that the Product's vanilla flavor does not come "exclusively from the vanilla plant" (SAC ¶ 8) to allege that the "characterizing vanilla flavor" of the Product is not "independently derived from the vanilla plant" (TAC ¶¶ 7, 8, 32) or "does not come independently from . . . the vanilla plant," (*id.* ¶¶ 20, 33, 34);

- Removing images of the back product label (SAC ¶¶ 5, 26)

- Adding conclusory allegations regarding laboratory testing results of other products (TAC ¶ 28);

- Adding [the] allegation that Plaintiff purchased the 32 ounce size Product (*id.* ¶ 7);

- Adding allegations regarding the source and characteristics of vanillin (*id.* ¶¶ 14, 22);

- Changing her purported "benefit of the bargain allegations" [] from alleging that she was denied the benefit of the bargain because she would have purchased other products that "contain the same or immaterially different amounts of real vanilla" (SAC ¶ 68), to alleging that she would have purchased other products that "are properly labeled . . ." (TAC ¶ 50); and

- Changing her requested remedy from a request for injunctive relief to "commence a corrective advertising campaign" (SAC ¶ 69) to a request for injunctive relief ordering Chobani to "commence corrective action" (TAC ¶ 51).

*Id.* at 12-13.  Further, Defendant states that "this case is past the point where Plaintiff may file an

amended complaint as a matter of course" and argues that Plaintiff's new allegations are outside the scope of the Court's Order and an "impermissible attempt to change her factual allegations without leave of Court as required under Rule 15." *Id*. at 13.

In her opposition Plaintiff notes that she "took into account this Court's analysis of *Elgindy*" and states that all of her new allegations "stem directly from the Court's Order dismissing her deception claims and granting her leave to amend her complaint to plead that damages are inadequate." Opp'n at 13.  Plaintiff claims that "[u]nder the unusual circumstances of this case, where only the claim under the UCL's unlawful prong survived, Plaintiff amended her complaint in good faith." *Id.*  Moreover, she argues that striking her allegations would be improper even if this Court finds that she exceeded the scope of the amendment the Court authorized because "that by itself does not necessarily warrant striking the unauthorized allegations." *Id*. at 14.  Further, Plaintiff states that nothing in the TAC is redundant, immaterial, or scandalous, and "certainly nothing that is prejudicial." *Id*. at 15.  Additionally, Plaintiff argues that she did "not put forth any new allegations of which Defendant was unaware or that increases its expenditure of time and money from litigating spurious issues" and as such, there are "no grounds to strike any of Plaintiff's allegations in the TAC." *Id*.

In its reply, Defendant argues that "[n]either Rule 12(f) nor Rule 15 permit Plaintiff to impermissibly change factual or legal allegations beyond the scope of the Court's order granting leave to amend." Reply at 10.  Additionally, Defendant claims that Plaintiff "clearly prejudices" Defendant "by revising her core allegations many months into litigation in her fourth complaint," but that even if Defendant was not prejudiced, the Court could still appropriately grant the motion to strike. *Id.* at 11.

"District [c]ourts in this circuit generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13–cv–01025–MCE–AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014) (citing *Katz v. Cal–W. Reconveyance Corp.*, 09–CV–04866–LHK, 2010 WL 3768049 (N.D. Cal. Sept. 21, 2010)); *see, e.g.*, *Cover v. Windsor Surry Co.*, Case No. 14–cv–05262, 2016 WL 3421361, at *3 (N.D. Cal. June 22, 2016) (citation

United States District Court
Northern District of California

omitted); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10–CV–01390–LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (citations omitted); *Topadzhikyan v. Glendale Police Dep't*, No. CV 10–387 CAS (SSx), 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010).  "However, . . . where leave to amend is given to cure deficiencies in certain specified claims, courts have held that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Ketab Corp. v. Mesriani & Assocs.*, 2:14–cv–07241–RSWL (MRW), 2015 WL 8022874, at *8 (C.D. Cal. Dec. 4, 2015) (citing *DeLeon*, 2010 WL 4285006, at *3); *see, e.g.*, *Jameson Beach Prop. Owners Ass'n*, 2014 WL 4925253, at *3 ("[W]here a prior court order granted limited leave to amend, [d]istrict [c]ourts in this circuit generally strike new claims or parties contained in an amended complaint when the plaintiff did not seek leave to amend."  (citing *Benton v. Baker Hughes*, CV–12–07735–MMM, 2013 WL 3353636 (C.D. Cal. June 30, 2013) and *Crane v. Yarborough*, CV 05–8534–DSF, 2012 WL 1067956 (C.D. Cal. Mar. 29, 2012))).  *See also Raiser v. City of Los Angeles*, No. CV 13-2925 RGK (RZ), 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) (district court dismissed the plaintiff's second amended complaint because the plaintiff continued to name several defendants whom the court had dismissed from the action and because "many if not all of the changes in the second amended complaint exceed[ed] the scope of leave granted by the [c]ourt . . . .").  *But see Khan v. K2 Pure Sols., L.P.*, Case No. 12–cv–05526–WHO, 2013 WL 6503345, at *11 (N.D. Cal. Dec. 4, 2013) ("Exceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof." (quoting *Lamumba Corp. v. City of Oakland*, No. 05–cv–2712, 2006 WL 3086726, at *4 (N.D. Cal. Oct. 30, 2006))).  "Thus, whether a district court will accept new claims and/or parties in an amended complaint after a motion to dismiss will depend on whether the plaintiff was granted leave to amend with or without limitation." *Jameson Beach Prop. Owners Ass'n*, 2014 WL 4925253, at *3 (citing *Urista v. Bank of Am., N.A.*, C11–03097–HRL, 2012 WL 10596, at *3 (N.D. Cal. Jan. 3, 2012)). "In all of these cases, courts looked at the specific language of the prior order to determine whether or not leave to amend was granted without limitation." *Id.*

   As noted above, the Court's Order expressly "[g]ave [Plaintiff] leave to amend her complaint to plead that damages are inadequate and that she is thus entitled to seek equitable

24

restitution under the UCL's unlawful prong."  Order at 23.  In finding that Plaintiff failed to demonstrate that there was an inherent limitation of the legal remedy, the Court noted that *Elgindy*, 2021 WL 116535 "suggested that a plaintiff could pursue equitable remedies under the UCL where such claims were 'rooted in a different theory' of liability that involved different allegations that her claims for damages."  *Id*. at 22 (quoting *Elgindy*, 2021 WL 116535 at *15).  Further, the Court noted that Plaintiff's various claims were rooted in the same allegations that the labeling of the Product was misleading to consumers and a violation of FDA regulations.  *Id*.

Defendant appears correct in that the Court's order was somewhat limited as it specifically granted Plaintiff leave to amend her remaining claim under the UCL's unlawful prong to plead the inadequacy of legal remedies with respect to her request for equitable restitution.  However, by now solely alleging a single claim under the UCL's unlawful prong based on the new and different theory that Defendant's labeling violated FDA regulations since the Product is not derived independently from the vanilla plant, Plaintiff took note of the Court's emphasis on *Elgindy* (*see* Order at 22).  More specifically, since *Elgindy*, 2021 WL 116535 at *15 states that a plaintiff can pursue equitable remedies under the UCL where such claims were rooted in a different theory.  The Court's prior Order granting leave to amend was predicated on this.  It appears that Plaintiff's new allegations pertaining to her new and different theory—that the Product's vanilla flavor is not independently derived from the vanilla plant—are permissibly within the scope of the Court's Order.  As such, Plaintiff's new allegations regarding laboratory testing of other related products as well as her new allegations regarding the source and characteristics of vanillin arguably support Plaintiff's new theory.  On the other hand, Plaintiff's other new allegations — that she purchased the 32 ounce size of the Product; that she is now seeking injunctive relief ordering Defendant to commence corrective action when she previously requested injunctive relief to commence a corrective advertising campaign; and changing her benefit of the bargain allegations to allege that she would have purchased other products that are properly labeled — are not within the scope of the Court's Order granting leave to amend. Those allegations are thus struck.

The Court thus **GRANTS** in part and **DENIES** in part Defendant's motion to strike Plaintiff's new allegations.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.      <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss and **GRANTS** in **PART** and **DENIES** in **PART** Defendant's motion to strike Plaintiff's new allegations in the TAC.

This order disposes of Docket No. 54.


**IT IS SO ORDERED**.


Dated: February 4, 2022

_____
EDWARD M. CHEN
United States District Judge