United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO,<br><br>    Plaintiff,<br><br>v.<br><br>CHOBANI, LLC,<br><br>    Defendant. | Case No. 20-cv-07437-EMC (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 79 |

This order addresses the parties' pending discovery dispute about the adequacy of Chobani's supplemental responses to plaintiff's first set of ROGs and RFPs.

1. Chobani need not respond further to ROGs and RFPs seeking discovery about "Qualified Vanilla Products" or "Unqualified Vanilla Products," terms that cover Chobani yogurts, coffee creamers, and milks that aren't at issue in this case. This case is only about Chobani's vanilla-flavored Greek yogurt and about whether the label on that yogurt violates an FDA regulation. The labels on, and ingredients in, other Chobani products aren't relevant.

2. For the yogurt at issue, all container sizes, of which three have been identified (32 oz., 5.3 oz., and a four-pack of the 5.3 oz.), are relevant. Regardless of size, the containers are alleged to have had "a common, uniform label." TAC ¶ 3. And the proposed class, persons in California who purchased the yogurt, isn't limited to persons who purchased a particular container size. *See id.* ¶ 37. By May 6, 2022, Chobani must amend its responses to conform with this ruling.

3. Some of the ROGs and RFPs seek information about "Vanilla Flavoring," a term plaintiff defines as "any ingredient that has a vanilla flavor (including, but not limited to, vanilla extract, vanillin, and ethyl vanillin), regardless of whether or not its inclusion as an ingredient in a product was intended to provide a vanilla flavor to the product." Dkt. 79-3 at 4 ¶ 11; *see also* Dkt. 79-4 at

5 ¶ 12. The parenthetical of examples in the definition is problematic, because its use assumes that the ingredients listed as examples provide a vanilla flavor, but Chobani isn't sure that two of these ingredients, vanillin and ethyl vanillin, do. *See* Dkt. 79 at 4. The parenthetical, then, makes factual—and possibly also legal—assumptions that could affect the merits of the case. To avoid putting Chobani in a catch-22, where it must choose between embracing assumptions it doesn't agree with, and providing incomplete answers, plaintiff must amend the definition of "Vanilla Flavoring." Until the amendment is made, Chobani need not respond further to any ROGs or RFPs using the term "Vanilla Flavoring."

4. Chobani has agreed to identify the supplier of the "natural flavors" listed as ingredients in its vanilla-flavored Greek yogurt. *See id.* Chobani must do so by May 6, 2022.

5. For ROGs 6 and 9, Chobani has agreed to produce documents from which answers to the ROGs can be determined. *See* Fed. R. Civ. P. 33(d) (providing an option to produce business records in response to interrogatories in certain circumstances). Chobani must do so by May 6, 2022. If plaintiff, upon reviewing the documents produced, concludes that answers to the ROGs are not readily apparent, plaintiff may seek to compel Chobani to amend its responses (via joint statement).

6. Chobani must answer ROG 17, which asks Chobani to identify "those companies or products that Chobani believes are in competition with the Product for market share . . . ." Dkt. 79-1 at 20. Chobani doesn't dispute that competing products are relevant to "any price premium that Chobani charged for its Product, which in turn is relevant to Plaintiff's relief of restitution." Dkt. 79 at 2. Chobani argues, however, that plaintiff "can determine companies in the yogurt marketplace from publicly available information." *Id.* at 5. Plaintiff isn't simply asking Chobani to identify other companies that sell yogurt; plaintiff is asking Chobani to identify its perceived competitors for vanilla-flavored Greek yogurt. That's a different question, and Chobani must provide an answer by May 6, 2022.

7. Chobani has produced only a few documents thus far because it maintains that plaintiff must first agree to an "ESI protocol, search terms and custodians." Dkt. 79 at 5. This district's ESI guidelines require cooperation, but they don't require parties who request ESI to first propose a list of custodians and search terms. There may be cases in which that step is sensible, but this case isn't

clearly one of them.  Chobani is in a better position than plaintiff to know which of its employees are likely to have responsive ESI and to determine how that ESI can best be located, reviewed, and produced.  Chobani, then, must take the initiative.

First, Chobani must select the custodians it deems most likely to possess responsive ESI and search their electronic records.  Chobani may use targeted search terms, but it must test and modify the terms if necessary to locate responsive documents.  Second, Chobani must produce the ESI it finds and tell plaintiff which custodians and search terms it used.  Third, if warranted, plaintiff may ask Chobani to add additional custodians or search terms.  Plaintiff must be specific and explain why the additional custodians or search terms will plausibly yield responsive ESI.  If plaintiff satisfies that burden, Chobani must conduct further searches.  This protocol is based in part on the one set out in *In re EpiPen Marketing, Sales Practices & Antitrust Litigation*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).  It will govern moving forward.  Chobani must take the first two steps under the protocol by May 20, 2022.

\* \* \*

The undersigned has endeavored to resolve all of the issues raised in the April 15, 2022, joint statement; but quite a few issues were included, so it's possible something was overlooked.  To the extent that any issue remains unresolved, or new issues arise, the parties may bring them to the undersigned's attention in one or more joint statements.  Although the hope and expectation is that the parties will resolve most of their disputes by first meeting and conferring.

**IT IS SO ORDERED.**

Dated: April 29, 2022

_____
ALEX G. TSE
United States Magistrate Judge